J-S32002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.K.L., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.L., MOTHER | : | No. 2139 EDA 2016 |

Appeal from the Decree June 7, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000952-2015,
FID-51-FN-0016432915

BEFORE:  GANTMAN, P.J., STABILE, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:              **FILED JUNE 05, 2017**

Appellant, E.L. ("Mother"), appeals from the decree entered in the Philadelphia County Family Court, which involuntarily terminated her parental rights to J.K.L. ("Child").[1]  After careful review, we affirm.

_____

[1] The termination hearing for J.K.L. ultimately concluded on June 7, 2016, with the trial court involuntarily terminating Mother's parental rights.  On July 7, 2016, Mother timely filed this appeal.  Notwithstanding the initial appeal filing date, the appeal was not listed for disposition due to the delay in transmittal of the certified record to this Court.  The certified record was first due by August 8, 2016.  After contact with the trial court, on September 8, 2016, the trial court advised that it had not completed its trial court opinion.  The trial court further stated it would try to complete the opinion despite the fact that the trial judge was on medical leave.  This Court requested eight updates between September 23, 2016 and November 10, 2016; however, the trial court failed to respond until November 15, 2016, when it informed this Court that the opinion would be ready by November 30, 2016.  After the trial court failed to file the opinion by November 30, 2016, this Court again contacted the trial court for an update on December
*(Footnote Continued Next Page)*

_____

*Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history of this case are as follows. On September 25, 2013, the Department of Human Services ("DHS") received a general protective services report, which alleged Mother's failure to provide Child's sibling with essential medical care. As a result, DHS enlisted the Health Intervention Program ("HIP") to help Mother care for her children. Between September 2013 and July 2015, Mother refused to cooperate with HIP personnel and social workers. As a result, the health of Child's sibling continued to deteriorate. In early 2015, doctors diagnosed Child with opposition defiant disorder ("ODD") and arranged for Child to receive weekly outpatient therapy; however, the treatment facility discharged Child after he missed four of eight appointments.

On July 17, 2015, DHS filed an urgent dependency petition for Child and his siblings. After a hearing on July 30, 2015, the court temporarily

_(Footnote Continued)_ ─────────────────

9, 2016. The trial court did not respond to this request or any of this Court's subsequent requests for updates in December 2016. On January 6, 2017, the trial court informed this Court that it did not have an estimated filing date for the opinion and record. Nevertheless, this Court finally received the certified record and the opinion on January 25, 2017, causing the briefing schedule to be delayed for almost six months. Further, this Court granted Mother's counsel a short extension of time to file her brief. Mother's counsel subsequently failed to file the brief within the extension, which resulted in remand of the case for an abandonment hearing on March 7, 2017. A week later, Mother's counsel filed the brief and a request for an extension of time. This Court denied counsel's request for an extension of time and accepted the brief as filed late. We offer the procedural history to explain the delay in the resolution of this child-fast-track appeal. *See In re T.S.M.*, 620 Pa. 602, 609 n.7, 71 A.3d 251, 255 n.7 (2013) (reproaching this Court for **unexplained** delays in disposition of cases involving at-risk children, causing them to remain in stasis for substantial, unnecessary time).

committed Child and his siblings to the custody of DHS. On September 10, 2015, the court adjudicated Child and his siblings dependent. The court also ordered DHS not to make any further efforts to reunify Mother and Child, in light of the court's aggravated circumstances determination, based on Mother's severe medical neglect of Child's sibling. Despite the court order of no further reunification efforts, the court ordered Mother to undergo mental health treatment and engage in supervised visits with Child. As a result, DHS offered Mother mental health treatment resources and supervised visitation with Child. The court held a permanency review hearing on October 26, 2015, where it determined continued placement of Child was necessary and appropriate due to Mother's failure to alleviate any of the circumstances, which had led to the initial placement of Child.

On December 31, 2015, DHS filed a petition for involuntary termination of Mother's parental rights to Child. Mother proceeded to a termination hearing on 6/7/16, where DHS presented the testimony of social worker, Amy Sweat. Ms. Sweat testified Mother had not progressed to unsupervised visits with Child due to Mother's inability to manage Child's behavioral issues, redirect Child's behavior, or engage Child during visits. Ms. Sweat specifically opined that Mother was unable to address Child's needs in a supervised setting. Ms. Sweat also explained only a limited bond exists between Mother and Child. Mother then claimed to have participated in the court-ordered mental health treatment and expressed her love for her

Child. The court ultimately terminated Mother's parental rights to Child pursuant to Sections 2511(a)(1), (a)(2), (a)(5), (a)(8), and determined termination was in Child's best interest pursuant to Section 2511(b). On July 7, 2016, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to 1925(b).

Mother raises the following issues for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(1)?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(2)?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(5)?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] UNDER 23 PA.C.S.A. § 2511(A)(8)?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION BY FINDING 23 PA.C.S.A. § 2511(B), THAT TERMINATION OF [MOTHER'S] PARENTAL RIGHTS BEST SERVE[S]…CHILD'S DEVELOPMENTAL, PHYSICAL, AND EMOTIONAL NEEDS AND WELFARE?

(Mother's Brief at 4).

As a preliminary matter, Rule 1925(b) requires that statements "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "[A]ny issues not raised in accordance with Rule

1925(b)(4) will be deemed waived." Pa.R.A.P. 1925(b)(4)(vii). Additionally, "appellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure. This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure." *Wilkins v. Marsico*, 903 A.2d 1281, 1284 (Pa.Super. 2006), *appeal denied*, 591 Pa. 704, 918 A.2d 747 (2007) (citing Pa.R.A.P. 2101).

Rule 2119(a) provides:

**Rule 2119.  Argument**

**(a)    General rule.**  The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).  Importantly:

The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

*In re Estate of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013).  Where an appellant fails to raise or properly develop issues on appeal, or where the brief is wholly inadequate to present specific issues for review, a court will not consider the merits of the claims raised on appeal.  *Butler v. Illes*, 747 A.2d 943 (Pa.Super.

2000) (holding appellant waived claim where she failed to set forth adequate argument concerning her claim on appeal; appellant's argument lacked meaningful substance and consisted of mere conclusory statements; appellant failed to explain cogently or even tenuously assert why trial court abused its discretion or made error of law). ***See also Lackner v. Glosser***, 892 A.2d 21 (Pa.Super 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); ***Estate of Haiko v. McGinley***, 799 A.2d 155 (Pa.Super. 2002) (stating rules of appellate procedure make clear appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in appellate brief, this Court's ability to provide appellate review is hampered, necessitating waiver of issue on appeal).

Instantly, Mother's Rule 1925(b) statement challenges only the sufficiency of the evidence to terminate her parental rights pursuant to Section 2511(a)(1). The statement fails to mention Mother's current challenges to the termination of her parental rights pursuant to Section 2511(a)(2), (a)(5), (a)(8), and (b). Further, while Mother's appellate brief lists challenges to termination pursuant to Sections 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) in her statement of questions involved, Mother's

argument falls woefully short of the requisite standards. At the outset, despite the five issues listed on appeal, Mother's argument is only three pages long. Mother also failed to divide her argument section into distinct parts for each of her five issues raised on appeal. *See* Pa.R.A.P. 2119(a). Mother further presents no cogent argument for her issues raised on appeal or appropriate citations to supporting legal authority. ***See In re Estate of Whitley, supra***. In fact, Mother's argument fails to address or even acknowledge the issues raised in her statement of questions involved. Instead, Mother raises a new argument in which she merely concludes the court erred when it directed DHS not to make reasonable efforts to facilitate the reunification of Mother and Child. Mother's failure to include four of her five issues in her Rule 1925(b) statement or address the five issues she raised on appeal in the argument section of her appellate brief arguably constitutes waiver. ***See*** Pa.R.A.P. 1925(b)(4)(vii)); ***Butler, supra***.

Nevertheless, even if Mother had properly preserved her issues for our review, she would not obtain relief. The standard and scope of review applicable in a termination of parental rights case is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the

record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1003-04 (Pa.Super. 2008) (*en banc*).

CYS sought the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to

subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8); and (b).

"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to

- 10 -

perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case

- 11 -

of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520

(Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have…her [parental] rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association

> with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *Id.* at 856.

Importantly, neither Section 2511(a) nor Section 2511(b) requires a court to consider at the termination stage, whether an agency provided a parent with reasonable efforts aimed at reunifying the parent with her children prior to the agency petitioning for termination of parental rights. *In re D.C.D.*, 629 Pa. 325, 342, 105 A.3d 662, 672 (2014). An agency's failure to provide reasonable efforts to a parent does not prohibit the court from granting a petition to terminate parental rights under Section 2511. *Id.* at 346, 105 A.3d at 675.

- 14 -

After a thorough review of the record, the briefs of the parties, the applicable law, and the opinion of the Honorable Lyris F. Younge, we conclude Appellant's issues would merit no relief. The trial court opinion fully discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed January 25, 2017, at 3-5) (finding: on September 10, 2015, court determined aggravated circumstances existed due to Mother's severe medical neglect of Child's sibling; based on this finding, DHS was not required to make reasonable efforts to facilitate reunification of Mother and Child; nevertheless, DHS provided Mother with Family Service Plan with specific permanency objectives; despite aid of Family Service Plan, Mother was unable to redirect Child's behavioral problems or address Child's needs during supervised visits; due to Mother's failures during supervised visits, social worker opined unsupervised visits were inappropriate for Mother; DHS has had custody of Child for eleven months at this point; during this time, Mother repeatedly failed to meet any of her Family Service Plan permanency objectives to allow reunification; under these circumstances, grounds for termination of Mother's parental rights exist pursuant to Sections 2511(a)(1), (a)(2), (a)(5), and (a)(8); additionally, termination of Mother's parental rights would not cause Child to suffer irreparable emotional harm; social worker testified Child has limited bond to Mother; further, Child's foster parents are able to manage Child's behavioral issues successfully; as such, termination is in best interests of Child; therefore, court properly

- 15 -

terminated Mother's parental rights).[2]

Moreover, Mother's current claim that DHS' failed to provide her reasonable reunification resources is not an appropriate consideration for the court at the termination stage of the proceedings and would not have prevented the grant of the termination petition in any event. ***See In re D.C.D., supra***. Further, DHS had no obligation to make reasonable reunification efforts in light of the court's September 10, 2015 finding of aggravated circumstances. ***See*** 42 Pa.C.S.A. § 6351(b) (explaining no new or additional reasonable efforts to preserve and reunify family are required if court has determined aggravated circumstance exist). Thus, Mother's claim would not warrant any relief even if she had properly preserved it. Based on the foregoing, we affirm the termination of Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/5/2017

_____

[2] We observe Section 2511(a)(8) does not apply to Mother's case because Child had not been in DHS' custody for twelve months prior to the termination hearing. Nevertheless, the court's reliance on Sections 2511(a)(1), (a)(2), and (a)(5) to terminate Mother's parental rights was proper.

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

IN RE: J.K.L.                              :        CP-51-DP-0001969-2015
                                           :        CP-51-AP-0000952-2015
                                           :
                                           :
APPEAL OF: E. L.                           :        Superior Court
                                           :        No. 2139  EDA 2016

OPINION

**Younge, J.**

This Appeal arises from this Court's Order on June 7, 2016, terminating the parental rights of E.L. ("Mother") is, pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office Angelina L. Dagher, Esquire, attorney for Mother, filed a timely Appeal from the June 7, 2016 order terminating mother's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On September 25, 2013, The Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that Mother of J.K.L. failed to provide J.K.L.'s sibling with essential medical care as the sibling suffered from chronic medical conditions. J.K.L.'s sibling was diagnosed with failure to thrive, prematurity and cardiac issues. The report stated Mother failed to take J.K.L.'s sibling to scheduled medical specialist appointment. The doctors stated without the appointments J.K.L.'s sibling could be at risk for continued failure to thrive. The Health Intervention Program (HIP) was enlisted to help Mother with attending medical appointments. HIP staff could not locate Mother and several messages were left for Mother. Mother failed to respond. J.K.L.'s grandmother advised HIP that her daughter, J.K.L.'s mother suffered from being cognitively delayed and had a poor attitude. The report was substantiated.

On January 12, 2015, Community Umbrella Agency (CUA), Turning Points for Children, implemented In-Home Services (IHS) in Mother's home.

On May 15, 2015, a CUA Turning Points for Children social worker visited the home. Mother would not allow the social worker entry into the home. CUA observed that the inside of the home was cluttered and filled with trash.

At an appointment at Children's Hospital of Philadelphia (CHOP) Karabots Clinic on June 2, 2015, the doctors observed J.K.L.'s sibling was losing weight and that his gastrostomy tube was leaking.

On June 18, 2015, a Turning Points for Children social worker visited Mother's home unannounced. Mother would not allow the Turning Points for Children social worker into the home. J.K.L. and his siblings were observed in the front room. Mother became hostile and upset.

J.K.L. was diagnosed as suffering from oppositional defiant disorder (ODD). J.K.L. was attending weekly outpatient therapy the Village from April 1, 2015 to May 28, 2015. J.K.L. missed four out of eight appointments and was discharged due to the missed appointments.

On July 17, 2015, DHS filed an urgent petition for J.K.L. and his siblings.

On July 30, 2015, an Adjudicatory Hearing for J.K.L. and his siblings was held before the Honorable Vincent L. Johnson, who ordered that they be temporarily committed to DHS; ordered that they be placed from the bar of the Court and deferred dependent adjudication. J.K.L. and siblings were placed in foster care through Turning Points for Children.

On August 27, 2015, a Motion for a finding of child abuse and aggravated circumstances was filed with the Court.

On September 10, 2015, an Adjudicatory Hearing for J.K.L. and his siblings was held before Judge Johnson, who discharged the temporary commitment to DHS, adjudicated the children dependent, and committed them to DHS. Judge Johnson ordered and referred Mother to the Behavioral Health System (BHS) for an evaluation. Mother was granted weekly supervised visits. Judge Johnson found aggravated circumstances existed as to Mother and found that J.K.L.'s sibling had been a victim of physical abuse resulting in serious bodily injury, medical neglect, sexual violence and aggravated neglect by both Mother and Father. Judge Johnson ordered that no further efforts be made to preserve the family or reunify J.K.L or his sibling with Mother.

On October 26, 2015, a Permanency Review Hearing for J.K.L. and his sibling was held before Judge Johnson, who ordered that they remain committed to DHS, and suspended visits for J.K.L.'s Father pending further order of the Court.

The matter was the listed on a regular basis before Judges of the Philadelphia Court of Common Pleas, Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. § 6351, and evaluated for the purpose of reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On June 7, 2016, during the Termination of Parental Rights Hearings for Mother, the Court found by clear and convincing evidence that Mother's parental rights as to J.K.L. should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the child that the goal be changed to Adoption.

The Appeal of Mother is as follows:

**Issues**

1) Whether it was proven by clear and convincing evidence that mother's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

2

## Discussion

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, Mother's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the child. The Court found by clear and convincing evidence that the mother refused or failed to perform her parental duties.

In the instant matter, the Court took judicial notice of a finding of aggravated circumstances in by Honorable Vincent L. Johnson in September 2015 with respect to Mother based on aggravated medical neglect and child abuse. ( N.T. 6/7/16, pg. 4). Testimony of the social worker revealed, Mother attended supervised visits with J.K.L. ( N.T. 6/7/16, pg. 5) According to social worker's testimony, Mother had trouble redirecting J.K.L.'s behavioral problems during the visit. (N.T. 6/7/16, pg. 5) Furthermore, Mother was unable to appropriately address J.K.L.'s needs during the supervised visit setting. (N.T. 6/7/16, pg. 6) Social worker's testimony revealed she did not feel it was appropriate to modify Mother's visits to unsupervised visits. (N.T. 6/7/16, pg. 5)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

3

In the present matter, J.K.L. had been in DHS care for eleven months. (N.T. 6/7/16, pg. 4) Testimony revealed the Court ordered no reunification efforts was required for Mother with regard to J.K.L. due to medical neglect and child abuse of J.K.L.'s sibling. ( N.T. 6/7/16, pg. 4)

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

As of the June 7, 2016 hearing, J.K.L. had been in care for at least eleven (11) months. (N.T. 6/7/16, pg. 4). Mother failed meet her Family Single Plan (FSP) permanency objectives in a way that would permit reunification to occur. (N.T. 6/7/16, pg. 4)

§2511 (a)(5) requires that :

> (5)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate Mother's parental rights.

In order to terminate parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. *In re Involuntary Termination of C.W.S.M and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super 2003).

4

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000). Herein, the testimony fo the social worker established that J.K.L. would not suffer any irreparable emotional harm if Mother's parental rights were terminated. (N.T. 6/7/16, pg. 20) Testimony of the social worker stated J.K.L. had a limited bonded with his Mother. (N.T. 6/7/16, pg. 8) Furthermore the social worker testified J.K.L.'s foster parent has been successful in behavioral management of J.K.L. (N.T. 6/7/16, pg. 7)

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the child, to change his goal to Adoption (N.T. 5/5/16, pg. 6-7)

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that it's ruling will not cause J.K.L. to suffer irreparable harm and it is in the best interest of the child, based on the testimony regarding the child's safety, protection, mental, physical and moral welfare, to terminate mother's parental rights.

Accordingly, the Trial Court's Orders entered on June 7, 2016, terminating the parental rights of Mother,  E.L.  , should be properly affirmed.

By the Court:

J.

5

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

IN RE: J.K.L.                      :      CP-51-DP-0001969-2015

                                    :      CP-51-AP-0000952-2015

                                    :

                                    :

APPEAL OF: E. L.          :      Superior Court

                                    :      No. 2139  EDA 2016

## PROOF OF SERVICE

I hereby certify that this court is serving, today, January 24, 2017, the foregoing Opinion, by regular mail, upon the following person(s):

Bennette Harrison, Esquire

City of Philadelphia Law Department

1515 Arch Street, 16th Floor

Philadelphia, PA 19103

Angelina Dagher, Esquire

1800 J.F.K. Bouevard

Sutie 300

Philadelphia, PA 19102-7402

Tracy Chambers Coleman, Esquire

1510 W. Glenwood Avenue

Philadelphia, PA 19132

Carla Beggin, Esquire

1800 J.F.K. Boulevard

Unit 300

Philadelphia, PA 19102

BY THE COURT

Honorable Lyris F. Younge

7